**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

ANITRISE BELL,

             *Plaintiff*,

*v.*

COMMISSIONER OF SOCIAL SECURITY,

       *Defendant*.

_____/

CASE NO. 2:17-cv-12357

DISTRICT JUDGE MARK A. GOLDSMITH

MAGISTRATE JUDGE PATRICIA T. MORRIS

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION ON CROSS MOTIONS FOR SUMMARY JUDGMENT (Docs. 16, 19)

## I.    RECOMMENDATION

In light of the entire record in this case, I suggest that substantial evidence supports the Commissioner's determination that Plaintiff is not disabled. Accordingly, **IT IS RECOMMENDED** that Plaintiff's Motion for Summary Judgment, (Doc. 16), be **DENIED**, that the Commissioner's Motion, (Doc. 19), be **GRANTED**, and that this case be **AFFIRMED**.

## II.    REPORT

### A.    Introduction and Procedural History

Pursuant to 28 U.S.C. § 636(b)(1)(B), E.D. Mich. LR 72.1(b)(3), and by Notice of Reference, this case was referred to the undersigned Magistrate Judge for the purpose of reviewing a final decision by the Commissioner of Social Security ("Commissioner") denying Plaintiff Anitrise Bell's ("Plaintiff") claims for Supplemental Security Income

benefits ("SSI") and Disability Insurance Benefits ("DIB"). (Doc. 3). The matter is currently before the Court on cross-motions for summary judgment. (Docs. 16, 19).

On September 2, 2014, Plaintiff filed the instant applications for SSI and DIB, alleging a disability onset date of May 26, 2014. (Tr. 204-16). The Commissioner denied her claims. (Tr. 75-90). Plaintiff then requested a hearing before an Administrative Law Judge ("ALJ"), which occurred on April 29, 2016 before ALJ Richard L. Sasena. (Tr. 54-74).  The ALJ issued a decision on July 18, 2016, finding Plaintiff not disabled. (Tr. 28-44). On June 14, 2017, the Appeals Council denied review, (Tr. 1-7), and Plaintiff filed for judicial review of that final decision on July 20, 2017. (Doc. 1).

### B.      Standard of Review

The district court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). The district court's review is restricted solely to determining whether the "Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Sullivan v. Comm'r of Soc. Sec.*, 595 F. App'x. 502, 506 (6th Cir. 2014) (internal quotation marks omitted). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (internal quotation marks omitted).

The Court must examine the administrative record as a whole, and may consider any evidence in the record, regardless of whether it has been cited by the ALJ. *See Walker v. Sec'y of Health & Human Servs.*, 884 F.2d 241, 245 (6th Cir. 1989). The Court

will not "try the case de novo, nor resolve conflicts in the evidence, nor decide questions of credibility." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). If the Commissioner's decision is supported by substantial evidence, "it must be affirmed even if the reviewing court would decide the matter differently and even if substantial evidence also supports the opposite conclusion." *Id*. at 286 (internal citations omitted).

### C.    Framework for Disability Determinations

Under the Act, "DIB and SSI are available only for those who have a 'disability.'" *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). "Disability" means the inability

> to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than [twelve] months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); 20 C.F.R. § 416.905(a) (SSI). The Commissioner's regulations provide that disability is to be determined through the application of a five-step sequential analysis:

> (i) At the first step, we consider your work activity, if any. If you are doing substantial gainful activity, we will find that you are not disabled.
>
> (ii) At the second step, we consider the medical severity of your impairment(s). If you do not have a severe medically determinable physical or mental impairment that meets the duration requirement . . . or a combination of impairments that is severe and meets the duration requirement, we will find that you are not disabled.

(iii) At the third step, we also consider the medical severity of your impairment(s). If you have an impairment(s) that meets or equals one of our listings in appendix 1 of this subpart and meets the duration requirement, we will find that you are disabled.

(iv) At the fourth step, we consider our assessment of your residual functional capacity and your past relevant work. If you can still do your past relevant work, we will find that you are not disabled.

(v) At the fifth and last step, we consider our assessment of your residual functional capacity and your age, education, and work experience to see if you can make an adjustment to other work. If you can make an adjustment to other work, we will find that you are not disabled. If you cannot make an adjustment to other work, we will find that you are disabled.

20 C.F.R. §§ 404.1520, 416.920; *see also Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001). "Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by [his or] her impairments and the fact that she is precluded from performing [his or] her past relevant work." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003). The burden transfers to the Commissioner if the analysis reaches the fifth step without a finding that the claimant is not disabled. *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006). At the fifth step, the Commissioner is required to show that "other jobs in significant numbers exist in the national economy that [the claimant] could perform given [his or] her RFC [residual functional capacity] and considering relevant vocational factors." *Rogers*, 486 F.3d at 241 (citing 20 C.F.R. §§ 416.920(a)(4)(v), (g)).

Under the authority of the Social Security Act, the Social Security Administration ("SSA") has promulgated regulations that provide for the payment of disabled child's insurance benefits if the claimant is at least eighteen years old and has a disability that began before age twenty-two (20 C.F.R. 404.350(a) (5) (2013). A claimant must establish a medically determinable physical or mental impairment (expected to last at least twelve months or result in death) that rendered her unable to engage in substantial gainful activity. 42 U.S.C. § 423(d)(1)(A). The regulations provide a five-step sequential evaluation for evaluating disability claims. 20 C.F.R. § 404.1520.

### D.    ALJ Findings

Following the five-step sequential analysis, the ALJ found Plaintiff not disabled under the Act. (Tr. 28-44). At Step One, the ALJ found that Plaintiff would meet the insured-status requirements of the Act through December 31, 2018, and had not engaged in substantial gainful activity since May 26, 2014. (Tr. 33). At Step Two, the ALJ concluded that the following impairments qualified as severe: degenerative disc disease and obesity. (Tr. 33-34). The ALJ also decided, however, that none of these met or medically equaled a listed impairment at Step Three. (Tr. 34). Thereafter, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform light work, except "she needs to change positions or sit down and stretch every 20 minutes. She can occasionally climb, balance, stoop, kneel, crouch, or crawl." (*Id.*). At Step Four, the ALJ found Plaintiff incapable of performing her past relevant work. (Tr. 38-39). Proceeding to Step Five, the ALJ found Plaintiff capable of performing a substantial number of jobs in the national economy, and therefore not disabled under the Act. (Tr. 39-40).

### E.      Administrative Record

#### 1.      Medical Evidence

The Court has reviewed Plaintiff's medical records. In lieu of summarizing her medical history here, the Court will make references and provide citations to the record as necessary in its discussion of the parties' arguments.

#### 2.      Administrative Hearing

#### i.      Function Report

Plaintiff filled out a Function Report dated September 15, 2014 which appears in the administrative record. (Tr. 255-62). She indicated that her condition inhibited her movement and caused "great" pain. (Tr. 255). "I need help to get out of bed." (*Id.*). "I am up most nights taking medication for the pain caused by my injury." (Tr. 256). Her problems interfered with various aspects of personal care as well, *i.e.*, dressing, caring for her hair, shaving, feeding herself, and using the toilet. (*Id.*). She did no cooking, household chores, or yard work. (Tr. 257). She rode in a car to doctors' appointments, but "[p]ain won't allow me to drive, someone has to drive me." (Tr. 258). She remained able to handle her finances but had no income. (Tr. 258-59). She specified no hobbies because she was "unable to participate in anything since injury." (Tr. 259). She was also "unable to socialize due to my condition." (Tr. 260). Prompted to indicate abilities with which she struggled, Plaintiff marked: lifting, squatting, bending, standing, reaching, walking, sitting, kneeling, stair climbing, and completing tasks. (*Id.*). If she walked a "very short distance," she would need to rest "about 40 minutes or more" before resuming her walk.

(*Id.*). She could pay attention "as long as I can stay awake." (*Id.*). Her medications made her "[t]ired." (Tr. 262).

### ii.      Plaintiff's Testimony at the Administrative Hearings

Plaintiff opened her testimony by noting she last worked in May 2014 as a caregiver. (Tr. 59). "I was at the company for ten years," but she stopped because she twisted her back and "the pain was excruciating." (Tr. 59-60). "And when I got off of work I tried to take my medication or whatever and just lay down, but I ended up going to the doctor the next morning. And ever since that point I've been off work." (Tr. 60).

Asked why she could not perform a "very simple job," Plaintiff explained that flare-ups in her back occurred "two to three times a month, and when that flare up happens it takes at least two days for me to get back right in order to be able to even leave the house, get up out the bed or anything. And so that would interfere with me being able to be at a job on time and things like that." (Tr. 60). She also noted pain in her right leg and shoulder. (*Id.*). She lived with her mother and her two children. (Tr. 61). She could sit comfortably for up to 20 minutes, but after that the pain in her "lower back," which radiated "to the hip, the buttocks, down the leg and" to the "right shoulder," would motivate her to change positions and stand. (Tr. 63). On an average day, she ranked her pain at an 8 out of 10. (Tr. 64). Her medications eased her pain somewhat, bringing it down to a 6.5. (Tr. 64). She could comfortably lift "[a]bout five pounds" because "it just hurts to lift. My shoulder, my back I can't lift like that." (Tr. 66). Her doctors did not want to treat her with surgery at the time of the hearing, and had been treating her with

injections instead. (*Id.*). The injections, however, had not offered her any substantial relief. (*Id.*).

In a typical day, Plaintiff would sit on the couch and watch television. (Tr. 67). "[L]aying down . . . feels better than sitting up. Sitting up I can't do for long at all." (Tr. 68). "My mother and my daughter will chip in and do the cooking." (Tr. 68). She needed help getting out of the tub and dressing herself. (Tr. 69).

### iii.    The VE's Testimony at the Administrative Hearings

The ALJ posed his first hypothetical as follows: "if [an individual of Plaintiff's age, education and work experience] is limited to light work and had to be able to change positions, sit down or stretch momentarily for maybe every 20 minutes or so, could occasionally climb, balance, stoop, kneel, crouch and crawl, with those limitations could any of the past relevant work be done?" (Tr. 71). The VE indicated that such an individual could not perform Plaintiff's past work as a caregiver, but that other work in the national economy would exist, including: "assembler" (with 81,000 national jobs), "packer" (with 92,000 national jobs), and "sorter" (with 54,000 national jobs). If the exertional level were reduced to sedentary, the VE listed off other relevant work, including: "order clerk" (76,000 national jobs), "sorter" (with 63,000 national jobs), and "inspector" (with 51,000 national jobs).

### F.    Governing Law

The ALJ must "consider all evidence" in the record when making a disability decision. 42 U.S.C. § 423(d)(5)(B). The regulations carve the evidence into various categories, "acceptable medical sources" and "other sources." 20 C.F.R. § 404.1513.

"Acceptable medical sources" include, among others, licensed physicians and licensed or certified psychologists. *Id.* § 404.1513(a). "Other sources" include medical sources who are not "acceptable" and almost any other individual able to provide relevant evidence. *Id.* § 404.1513(d). Only "acceptable medical sources" can establish the existence of an impairment. SSR 06-03p, 2006 WL 2329939, at *2 (Aug. 9, 2006).   Both   "acceptable" and non-acceptable sources provide evidence to the Commissioner, often in the form of opinions "about the nature and severity of an individual's impairment(s), including symptoms, diagnosis and prognosis, what the individual can still do despite the impairment(s), and physical and mental restrictions." *Id.* When "acceptable medical sources" issue such opinions, the regulations deem the statements to be "medical opinions" subject to a multi-factor test that weighs their value. 20 C.F.R. § 404.1527. Excluded from the definition of "medical opinions" are various decisions reserved to the Commissioner, such as whether the claimant meets the statutory definition of disability and how to measure his or her RFC. *Id.* § 404.1527(d).

The ALJ must use a six-factor balancing test to determine the probative value of medical opinions from acceptable sources. 20 C.F.R. § 404.1527(c). The test looks at whether the source examined the claimant, "the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and specialization of the treating source." *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004); *see also* 20 C.F.R. § 404.1527(c). ALJs must also apply those factors to

"other source" opinions. *See Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 540-42 (6th Cir. 2007); SSR 06-03p, 2006 WL 2329939, at *2 (Aug. 9, 2006).

Certain opinions of a treating physician, in contrast, receive controlling weight if they are "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and are "not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(d)(2); *see also Wilson*, 378 F.3d at 544. The only opinions entitled to dispositive effect deal with the nature and severity of the claimant's impairments. 20 C.F.R. § 404.1527(d); SSR 96-2p, 1996 WL 374188, at *1-2 (July 2, 1996). Therefore, the ALJ does not owe a treating opinion deference on matters reserved to the Commissioner. 20 C.F.R. § 404.1527(d); SSR 96-2p, 1996 WL 374188, at *1-2 (July 2, 1996). The ALJ "will not give any special significance to the source of an opinion" regarding whether a person is disabled or unable to work, whether an impairment meets or equals a Listing, the individual's RFC, and the application of vocational factors. 20 C.F.R. § 404.1527(d)(3).

The regulations mandate that the ALJ provide "good reasons" for the weight assigned to the treating source's opinion in the written determination. 20 C.F.R. § 404.1527(c)(2); *see also Dakroub v. Comm'r of Soc. Sec.*, 482 F.3d 873, 875 (6th Cir. 2007). Therefore, a decision denying benefits

> must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's opinion and the reasons for that weight.

10

SSR 96-2p, 1996 WL 374188, at *5 (July 2, 1996); *see also Rogers*, 486 F.3d at 242. For example, an ALJ may properly reject a treating source opinion if it lacks supporting objective evidence. *Revels v. Sec'y of Health & Human Servs.*, 882 F. Supp. 637, 640-41 (E.D. Mich. 1994), *aff'd*, 51 F.3d 273 (Table), 1995 WL 138930, at *1 (6th Cir. 1995).

An ALJ must analyze the consistency of the claimant's statements with the other record evidence, considering her testimony about pain or other symptoms with the rest of the relevant evidence in the record and factors outlined in Social Security Ruling 16-3p, 2016 WL 1119029 (Mar. 16, 2016). This analysis and the conclusions drawn therefrom—formerly termed a credibility determination[1]—can be disturbed only for a "compelling reason." *Sims v. Comm'r of Soc. Sec.*, 406 F. App'x 977, 981 (6th Cir. 2011); *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004).

The Social Security regulations establish a two-step process for evaluating subjective symptoms, including pain. 20 C.F.R. § 404.1529; 16-3p, 2016 WL 1119029, at *2. The ALJ evaluates complaints of disabling pain by confirming that objective medical evidence of the underlying condition exists. The ALJ then determines whether that

---

[1] On March 28, 2016, SSR 16-3p, 2016 WL 1119029 (Mar. 16, 2016), superseded and replaced SSR 96-7p. *See* SSR 16-3p, 2016 WL 1237954 (Mar. 24, 2016). The SSA explained in SSR 16-3p that the ruling's main purpose was to eliminate the term "credibility," and thereby "clarify that subjective symptom evaluation is not an examination of an individual's character, . . ." 2016 WL 1119029, at *1 n.1. As some in this Circuit have observed, the ruling, read in its entirety does not appear to substantively alter much of the manner by which ALJ's evaluate claimants' statements. *See id.* at *2 ("[W]e are eliminating the use of the term 'credibility from our sub-regulatory policy, as our regulations do not use this term. In doing so, we clarify that subjective symptom evaluation is not an examination of an individual's character. Instead, we will more closely follow our regulatory language regarding symptom evaluation."); *see also, e.g., Brothers v. Berryhill*, No. 5:16-CV-01942, 2017 WL 2912535, at *10 (N.D. Ohio June 22, 2017), *R. & R. adopted sub nom. Brothers v. Comm'r of Soc. Sec.*, No. 5:16-CV1942, 2017 WL 2908875 (N.D. Ohio July 7, 2017) ("[A]ccording to the very language of SSR 16-3p, its purpose is to 'clarify' the rules concerning subjective symptom evaluation and not to substantially *change* them.").

condition could reasonably be expected to produce the alleged pain or whether other objective evidence verifies the severity of the pain. *See* 20 C.F.R. § 404.1529; 16-3p, 2016 WL 1119029, at *2; *Stanley v. Sec'y of Health & Human Servs.*, 39 F.3d 115, 117 (6th Cir. 1994). The ALJ ascertains the extent of the work-related limitations by determining the intensity, persistence, and limiting effects of the claimant's symptoms. 16-3p, 2016 WL 1119029, at *2.

While "objective evidence of the pain itself" is not required, *Duncan v. Sec'y of Health & Human Servs.*, 801 F.2d 847, 853 (6th Cir. 1986) (quoting *Green v. Schweiker*, 749 F.2d 1066, 1071 (3d Cir. 1984)) (internal quotation marks omitted), a claimant's description of his or her physical or mental impairments alone is "not enough to establish the existence of a physical or mental impairment," 20 C.F.R. § 404.1528(a). Nonetheless, the ALJ may not disregard the claimant's subjective complaints about the severity and persistence of the pain simply because they lack substantiating objective evidence. 16-3p, 2016 WL 1119029, at *5. Instead, the absence of objective confirming evidence forces the ALJ to consider the following factors:

(i)     Your daily activities;
(ii)    The location, duration, frequency, and intensity of . . . pain;
(iii)   Precipitating and aggravating factors;
(iv)    The type, dosage, effectiveness, and side effects of any medication . . . taken to alleviate . . . pain or other symptoms;
(v)     Treatment, other than medication, . . . received for relief of . . . pain;
(vi)    Any measures . . . used to relieve . . . pain.

20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3); *see also Felisky v. Bowen*, 35 F.3d 1027, 1039-40 (6th Cir. 1994); 16-3p, 2016 WL 1119029, at *7. Furthermore, the claimant's

work history and the consistency of his or her subjective statements are also relevant. 20 C.F.R. § 404.1527(c); 16-3p, 2016 WL 1119029, at *8.

The claimant must provide evidence establishing her RFC. The statute lays the groundwork for this, stating, "An individual shall not be considered to be under a disability unless he [or she] furnishes such medical and other evidence of the existence thereof as the Secretary may require." 42 U.S.C. § 423(d)(5)(A); *see also Bowen*, 482 U.S. at 146 n.5. The RFC "is the most he [or she] can still do despite his [or her] limitations," and is measured using "all the relevant evidence in [the] case record." 20 C.F.R. § 404.1545(a)(2). A hypothetical question to the VE is valid if it includes all credible limitations developed prior to Step Five. *Casey v. Sec. of Health & Human Servs.*, 987 F.2d 1230, 1235 (6th Cir. 1993); *Donald v. Comm'r of Soc. Sec.*, No. 08-14784-BC, 2009 WL 4730453, at *7 (E.D. Mich. Dec. 9, 2009).

### G.      Analysis

Plaintiff raises two arguments in her Motion: (1) the ALJ should have accorded greater weight to the opinions of record from Dr. Alam, her treating physician, (Doc. 16 at ID 549-58); and (2) new and material evidence mandates a remand under Sentence Six of the 42 U.S.C. § 405(g), (*Id.* at ID 558-63). I address each argument in turn.

### 1.      The ALJ's Treatment of Dr. Alam's Opinions

Plaintiff first argues that the ALJ inappropriately granted little weight to Dr. Alam's opinions. As she summarizes, "Dr. Alam is the only physician in the Record to provide opinions about Plaintiff's capacity for work," and the limitations he prescribed "would preclude the capacity for even sedentary work." (Doc. 16 at ID 551) (emphasis

omitted). She avers, however, that the ALJ discounted Dr. Alam's findings improperly. She notes, for instance, that "there is no discussion of any of the factors in 20 C.F.R. § 404.1527(c)(2)-(6) that must be addressed in the evaluation of any opinion, . . ." (*Id.* at ID 557). In her view, the ALJ "represent[ed] that all of Dr. Alam's opinions were merely limited to the statement that Plaintiff is 'disabled,'" when in fact, his opinions were more specific and nuanced. (*Id.* at ID 553). Further, she accuses the ALJ of "improperly speculat[ing]" that Dr. Alam grounded his reports on Plaintiff's subjective statements, when in fact he cited objective reports, had "acted as Plaintiff's physician since 2009, and has ample background with which to gauge the veracity of her statements to him." (*Id.* at ID 554). And because Plaintiff "has met her burden at step-four . . . by showing that she cannot return to her past work," Plaintiff contends that the ALJ failed to meet his burden of finding a substantial number of jobs for her to perform at Step Five of the sequential analysis. (*Id.* at ID 550).

Evaluating medical source statements requires considering factors such as the nature of the source's examining relationship with the client, 20 C.F.R. § 416.1527(c)(1), the source's treatment relationship with the client, *id.* § (c)(2), the supportability of the source's opinion, *id.* § (c)(3), the consistency of the opinion with the record as a whole, *id.* § (c)(4), whether the source is a specialist opining on areas within her specialty, *id.* § (c)(5), as well as "any factors" the claimant or others "bring to [the Commissioner's] attention, or of which [the Commissioner] is aware, which tend to support or contradict the opinion," *id* § (c)(6). The ALJ "will always give good reasons. . . for the weight" given a "*treating* source's opinion." *Id* § (c)(2) (emphasis added). The ALJ, however,

need not give 'good reasons' with respect to 'other sources'—rather, he "generally should explain the weight given to opinions from . . . 'other sources,' or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the case." SSR 06-03p, 2006 WL 2329939, at *6 (S.S.A. Aug. 9, 2006). There remains an important "distinction between what an adjudicator must consider and what the adjudicator must explain." *Id.*

At the outset, I note that Plaintiff's challenge is not directed at the ALJ's Step-Five conclusions, but his refusal to incorporate certain limitations—*i.e.*, those Dr. Alam prescribed—in his RFC assessment. The burden to prove the existence of those limitations rested with Plaintiff, not the ALJ. *See Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 392 (6th Cir. 1999) ("To require the Commissioner to prove a claimant's RFC at step five is essentially to partially shift the burden of proof required of a claimant at step four to the Commissioner."); *see also Seiler v. Comm'r of Soc. Sec.*, No. 2:16-CV-13541, 2018 WL 992062, at *5 (E.D. Mich. Feb. 1, 2018) ("Although Plaintiff purports to frame this as a challenge to the ALJ's Step 5 determination, because the hypothetical posed to the vocational expert in this matter is essentially identical to the RFC, this is in reality a 'veiled attack' on the ALJ's underlying RFC finding." (quoting *Kirchner v. Colvin*, No. 12-CV-15052, 2013 WL 5913972, at *11 (E.D. Mich. Nov. 4, 2013))), *R. & R. adopted,* No. 16-13541, 2018 WL 949952 (E.D. Mich. Feb. 20, 2018). In this, she has failed.

The ALJ listed myriad good reasons for his election to accord Dr. Alam's opinions little weight. After summarizing his opinions and findings, (Tr. 35-36), the ALJ

proceeded to outline the deficits therein. To the extent Dr. Alam found Plaintiff legally disabled, which is an issue reserved to the Commissioner, the ALJ was entitled to find him unpersuasive. *See* 20 C.F.R. § 404.1527(d) ("Opinions that you are disabled" are "not medical opinions" but "instead" are "opinions on issues reserved to the Commissioner because they are administrative findings that are dispositive of a case"); *Allen v. Comm'r of Soc. Sec.*, 561 F.3d 646, 651 (6th Cir. 2009) (finding the ALJ may give "no weight" to medical source statements on issues "reserved exclusively to the Commissioner"); (Tr. 472) (indicating in conclusory fashion that Plaintiff could not work 40 hours per week). The limitations Dr. Alam suggested conflicted, as well, with other evidence showing a lack of paraspinal muscle tenderness, intact range of motion, and normal motor strength and tone. (Tr. 35-36); *e.g.*, (Tr. 335-43, 466, 468-71) (noting a lack of paraspinal tenderness and edema, as well as intact range of motion of the back); (Tr. 485) (intact motor strength, unimpaired gait, and a full range of motion in the shoulders and hips). He noted, as well, that Plaintiff's conditions were treated conservatively. (Tr. 35-36); *e.g.*, (Tr. 385, 397, 409, 423, 443, 483) (documenting a monthly treatment schedule and a lack of surgical intervention). Dr. Alam also indicated that Plaintiff struggled with vision, a finding which finds no support in the record whatsoever. *See, e.g.*, (Tr. 476, 480, 484).

Plaintiff takes particular offense at the ALJ's inference that Dr. Alam accepted her subjective statements as true absent medical evidence, but the inference was warranted. Dr. Alam's findings mirror excerpts of the record in which Plaintiff relayed her symptoms to medical providers, but they *do not* mirror the clinical notations juxtaposed

with those statements on those same pages. *Compare* (Tr. 459-60) (listing "severe back pain, numbness, tingling, weakness of lower extremities, difficulty walking and limited range of back motion" but citing only diagnostic objective evidence), *and* (Tr. 473-74) (check-box form), *with* (Tr. 335-43, 466-71). Although Dr. Alam cited objective evidence, such evidence said little about the existence and severity of myriad symptoms Plaintiff alleged. *See Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988) ("The mere diagnosis of arthritis, of course, says nothing about the severity of the condition."). Especially where, as here, the ALJ found Plaintiff's subjective statements unreliable, a treating physician's reliance on subjective statements may be weighed against her opinion.[2] *E.g.*, *Remias v. Comm'r of Soc. Sec.*, 690 F. App'x 356, 357 (6th Cir. 2017) (finding reasonable the ALJ's decision to discount a medical opinion grounded on incredible subjective statements); *cf. Bell v. Barnhart*, 148 F. App'x 277, 285 (6th Cir. 2005) ("There is no indication that Dr. McFadden's opinion was supported by anything other than Bell's self-reports of his symptoms. Such reports alone cannot support a finding of impairment.").

Plaintiff also suggests that the ALJ "selective[ly] incorporat[ed]" adverse findings from Dr. Hussain, rather than crediting his "multiple" findings "of tenderness of the lumbar spine at the L2-L5 vertebral levels and of the thoracic spine at the T1-T5 levels, a

---

[2] Plaintiff does not challenge this finding, thereby conceding its validity. *Accord, e.g.*, *Powers v. Comm'r of Soc. Sec.*, No. 13-10575, 2014 WL 861541, at *7 (E.D. Mich. Mar. 5, 2014) ("Plaintiff, however, does not challenge the ALJ's credibility finding, and therefore, she has waived this argument." (citing *Hollon v. Comm'r of Soc. Sec.*, 447 F.3d 477, 491 (6th Cir. 2006) (refusing to "formulate arguments on [the plaintiff's] behalf, or to undertake an open-ended review" where she "made little effort to develop" her challenge))).

positive facet loading test, and positive straight leg raising." (Doc. 16 at ID 556). As discussed above, however, the ALJ addressed all such evidence and merely resolved conflicts therein. *Cf., e.g.*, *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 284 (6th Cir. 2009) ("[W]e see little indication that the ALJ improperly cherry picked evidence; the same process can be described more neutrally as weighing the evidence."); *Albanna v. Comm'r of Soc. Sec.*, No. 15-CV-14264, 2016 WL 7238925, at *12 (E.D. Mich. Nov. 22, 2016) ("Arguments which in actuality require 're-weigh[ing] record evidence' beseech district courts to perform a forbidden ritual." (quoting *DeLong v. Comm'r of Soc. Sec. Admin.*, 748 F.3d 723, 726 (6th Cir. 2014))), *R. & R. adopted,* No. 15-14264, 2016 WL 7210715 (E.D. Mich. Dec. 13, 2016); *Hairston v. Comm'r of Soc. Sec.*, No. 14-13218, 2015 WL 4633935, at *6 (E.D. Mich. Aug. 3, 2015) ("The Sixth Circuit has consistently upheld the discretion vested in ALJs to weigh conflicting record evidence in assessing a claimant's disability status.").

For these reasons, the ALJ's assignment of little weight to Dr. Alam is supported by substantial evidence. The Court should find Plaintiff's lamentations to the contrary unpersuasive.

## 2.   **Remand under Sentence Six**

Plaintiff next argues that new and material evidence requires remand, as it "would have led the ALJ to reach a different conclusion, and the Appeals Council's statement that this evidence did not relate to the period at issue is plainly incorrect, and unsupported by any law, rule, regulation, or administrative procedure known to the undersigned." (Doc. 16 at ID 559). In her view, the new evidence "consisted of medical records

18

detailing new, aggressive treatment of Plaintiff's back conditions," including the use of "bilateral Radiofrequency Ablations" in the lumbar spine. (*Id.*).

Remand under Sentence Six is not appropriate unless the claimant shows: (1) "the evidence at issue is both 'new' and 'material,'" and (2) "there is 'good cause for the failure to incorporate such evidence into the record in a prior proceeding.'" *Hollon ex. rel. Hollon v. Comm'r of Soc. Sec.*, 447 F.3d 477, 483 (6th Cir. 2006) (quoting 42 U.S.C. § 405(g)). Evidence is new only if "it was 'not in existence or available to the claimant at the time of the administrative proceeding.'" *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001) (quoting *Sullivan v. Finkelstein*, 496 U.S. 617, 626 (1990)). It is material only if "there is 'a reasonable probability that the Secretary would have reached a different disposition of the disability claim if presented with the new evidence.'" *Id.* (quoting *Sizemore v. Sec'y of Health & Human Servs.*, 865 F.2d 709, 711 (6th Cir. 1988)). And one shows good cause by "demonstrating a reasonable justification for the failure to acquire and present the evidence for inclusion in the hearing before the ALJ." *Id.* (citing *Willis v. Sec'y of Health & Human Servs.*, 727 F.2d 551, 554 (1984) (per curiam)). "It is well established that the party seeking remand bears the burden of showing that a remand is proper under Section 405." *Oliver v. Sec'y of Health & Human Servs.*, 804 F.2d 964, 966 (6th Cir. 1986).

Having reviewed the allegedly new and material evidence Plaintiff submitted, I cannot agree that it requires remand. About half of such records are not new, as they were in existence at the time the ALJ rendered his decision. (Tr. 45-53). The remaining records are new, but not material, for the evidence therein is largely duplicative of that originally

in the record before the ALJ. Indeed, the new records reinforce the ALJ's conclusions that Plaintiff's back conditions are not particularly limiting. *E.g.* (Tr. 24, 27) (normal gait); (Tr. 23, 26) (intact motor strength); (Tr. 22-23, 25-26) (medication was effective and without side effects). Moreover, as Defendant notes, Plaintiff offers no evidence that radiofrequency ablations constitute more than conservative treatment, and other cases from the Sixth Circuit have declined to find as such. *See Cutcher v. Comm'r of Soc. Sec. Admin.*, No. 4:14-CV-1958, 2015 WL 5233244, at *7 (N.D. Ohio Sept. 8, 2015); *Nause v. Comm'r of Soc. Sec. Admin.*, No. 3:14CV941, 2015 WL 1728209, at *8 (N.D. Ohio Apr. 15, 2015); *Barnes v. Comm'r of Soc. Sec.*, No. 1:12-CV-529, 2013 WL 2897886, at *7 (S.D. Ohio June 13, 2013), *R. & R. adopted,* No. 1:12-CV-529, 2013 WL 3944441 (S.D. Ohio July 31, 2013); *cf., e.g.*, *Butts v. Comm'r of Soc. Sec.*, No. 3:16-CV-874 (CFH), 2018 WL 38793, at *3 (N.D.N.Y. Jan. 11, 2018). Accordingly, there is no reasonable probability that this evidence would have had any impact on the ALJ's conclusions, and a remand under Sentence Six is not warranted.

### H.    Conclusion

For the reasons stated above, the Court **RECOMMENDS** that Plaintiff's Motion for Summary Judgment, (Doc. 16), be **DENIED**, that the Commissioner's Motion, (Doc. 19), be **GRANTED**, and that this case be **AFFIRMED**.

## III.    <u>REVIEW</u>

Pursuant to Rule 72(b)(2) of the Federal Rules of Civil Procedure, "[w]ithin 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. A

party may respond to another party's objections within 14 days after being served with a copy." Fed. R. Civ. P. 72(b)(2); *see also* 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Dakroub v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date:  April 30, 2018                                     S/ PATRICIA T. MORRIS
                                                          Patricia T. Morris
                                                          United States Magistrate Judge

## <u>CERTIFICATION</u>

I hereby certify that the foregoing document was electronically filed this date through the Court's CM/ECF system which delivers a copy to all counsel of record.

Date: April 30, 2018                                  By <u>s/Kristen Castaneda</u>
                                                              Case Manager